UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOBCAR MEDIA, LLC. | Civil Action No.: |
| Plaintiff, | 1:21-cv-05685 (AKH)(OTW) |
| v. | |
| DEUTSCHE TELEKOM AG (d/b/a T-MOBILE), T-MOBILE USA, INC., SAMSUNG ELECTRONICS CO. LTD., and SAMSUNG ELECTRONICS AMERICA, INC. | (JURY TRIAL DEMANDED) |
| Defendants. | |

**BOBCAR'S OBJECTIONS TO MAGISTRATE'S
REPORT AND RECOMMENDATION
ON T-MOBILE AND SAMSUNG'S MOTION TO DISMISS**

Morris E. Cohen (MC-4620)
Lee A. Goldberg (LG-9423)
GOLDBERG COHEN LLP
1350 Avenue of the Americas, 3rd Floor
New York, New York 10019
(646) 380-2084 (phone)
(646) 514-2123 (fax)

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iv

TABLE OF EXHIBITS ............................................................................................. v

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

    The Intellectual Property ..................................................................................... 3

    Defendants' Infringement ..................................................................................... 3

    Bobcar's Prior Action Against Aardvark .............................................................. 4

    The Willfulness of Defendants' Infringement ...................................................... 5

ARGUMENT ............................................................................................................. 6

I.      STANDARD OF REVIEW ............................................................................ 6

II.    BOBCAR'S TRADE DRESS CLAIM IS NOT LEGALLY PRECLUDED ........ 6

    A.    In Aardvark, Judge Oetken Only Determined Whether Bobcar Had
          Enforceable Rights in 2008 – Which is Irrelevant to This Action ............... 6

    B.    The Federal Circuit Did Not Resolve The Present Question Either............ 8

    C.    The Law of Collateral Estoppel.................................................................. 9

          1.    The Identical Issues Were Not Raised in the Prior Proceeding ........... 9

              i.    The Trade Dress Claim is Different................................................ 9

              ii.  The Secondary Meaning Issue is Different................................... 10

                  a.     The Issues are Factually Different .................................... 10

                  b.    There Are Intervening Facts and Law .............................. 11

          2.    These Issues Were Not Litigated or Decided .................................... 12

          3.    There Was No Full and Fair Opportunity to Litigate Them ............... 13

          4.    Whether There was Secondary Meaning in 2015-2016 Was Not
              Necessary to Support a Final Judgment on Aardvark's Behalf .......... 14

III.   THE LAW AS TO THE DESIGN PATENT CAUSES OF ACTION ................ 14

    A.    The Law on a 12(b)(6) Motion.................................................................. 14

    B.    The Law on Assessing Design Patent Infringement ................................. 15

          1.    The Standard for Similarity ............................................................... 15

          2.    The Design Must be Viewed as a Whole........................................... 15

3.     Principles of Claim Construction ...................................................... 15

4.     Overall Similarity Cannot Be Negated by Minor Differences ............ 16

5.     All Design Patent Views Must Be Considered .................................... 17

6.     The Analysis Must be in the Context of the Prior Art ........................ 17

IV.     BOBCAR HAS PLED A CASE OF DESIGN PATENT INFRINGEMENT ...... 18

A.     Defendants' Admissions and Actions Show Infringement ........................ 18

B.     Judge Oetken's Decision is Persuasive ...................................................... 19

C.     Defendants' Design Patent Infringement is a Factual Question ................ 19

D.     The Overall Similarities Show Infringement ............................................. 20

1.     The L-Shaped Panels are Irrelevant to the '823 Patent ...................... 20

2.     The Mix of Frames and Panels Infringes the '675 Patent .................. 21

3.     The Mix of Features Infringes the '353 Patent .................................. 22

4.     The Prior Art Analysis Further Confirms This .................................... 22

5.     Overall, the Evidence Supports Infringement ..................................... 24

CONCLUSION .......................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) ................................. 14

*Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365 (Fed. Cir. 2006) ............. 15

*Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314 (Fed. Cir. 2012)................................. 17

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955 (2007)................................... 14

*Bobcar Media LLC v. Aardvark Event Logistics, Inc.,* 1:16-cv-00885 (S.D.N.Y)
     (Oetken, J.)........................................................................................................................ 4

*Brandon v. NPG Records, Inc.*, 840 F. App'x 605 (2d Cir. 2020) ..................................... 9

*Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815 (Fed. Cir. 1992) ............................. 7

*Commissioner v. Sunnen*, 333 U.S. 591, 68 S. Ct. 715 (1948). ........................................ 12

*Converse, Inc. v. ITC*, 909 F.3d 1110 (Fed. Cir. 2018) ...................................................... 1

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008)
     (en banc)..................................................................................................... 17, 23, 24

*Gorham Co. v. White*, 81 U.S. 511 (1871)................................................................. 15, 16

*In re Lapworth*, 59 C.C.P.A. 738, 451 F.2d 1094 (1971)................................................. 15

*ING Bank N.V. v. M/V Temara*, 892 F.3d 511 (2d Cir. 2018) ......................................... 13

*Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449 (1985)............................................................ 9

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir.
     1993) ............................................................................................ 15, 17, 19, 23

*Lawson v. Homenuk*, 710 F. App'x 460, 466 (2d Cir. 2017)............................................ 13

*Lewis v. Krymkevich*, 2009 U.S. Dist. LEXIS 117686 (S.D.N.Y. Dec. 17, 2009) ............. 6

*Litton Sys., Inc. v. Whirlpool Corp.,* 728 F.2d 1423 (Fed. Cir. 1984) ............................. 16

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.,* 140 S. Ct. 1589 (2020) .... 11

*Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985 (Fed. Cir. 1993) ............... 16

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) ....................... 15

*Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524 (Fed. Cir. 2012) .............. 17, 23

*Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1043 (2d Cir. 1980)................... 7

*Shure Inc. v. Clearone, Inc.*, 2020 U.S. Dist. LEXIS 191115 (D. Del. Oct. 15, 2020) .... 17

*United States v. Male Juvenile*, 121 F.3d 34 (2d Cir. 1997)............................................. 6

*United States v. Raddatz*, 447 U.S. 667, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980).......... 6

*Willey v. Kirkpatrick*, 801 F.3d 51 (2d Cir. 2015) ......................................................... 13

**Statutes**

15 U.S.C. §1052(f)........................................................................................................ 1, 11

28 U.S.C. § 636(b)(1) ......................................................................................................... 6

28 U.S.C. 636(b)(1) ............................................................................................................ 6

**Other Authorities**

Manual of Patent Examining Procedure §1503.02 III ...................................................... 16

Manual of Patent Examining Procedure §1504.04 .......................................................... 16

**Rules**

Fed. R. Civ. P. 12(b)(6)......................................................................................... 14, 24, 25

Fed. R. Civ. P. 56(f)(2) ..................................................................................................... 13

Fed. R. Civ. P. 72(b)(3)....................................................................................................... 6

**TABLE OF EXHIBITS**

Exhibit 1        Bobcar's U.S. Patent No. 7,942,461 B2 ("the '461 Patent")

Exhibit 2        Bobcar's U.S. Patent No. 8,220,854 B2 ("the '854 Patent")

Exhibit 3        Bobcar's U.S. Patent No. 8,690,215 B2 ("the '215 Patent")

Exhibit 4        Bobcar's U.S. Patent No. D652,353 S ("the '353 Patent")

Exhibit 5        Bobcar's U.S. Patent No. D678,823 S ("the '823 Patent")

Exhibit 6        Bobcar's U.S. Patent No. D736,675 S ("the '675 Patent")

Exhibit 7        Materials from Supreme Court's *Gorham* case

Exhibit 8        Materials from Federal Circuit's *Crocs* case

Exhibit 9        Materials from Federal Circuit's *L.A. Gear* case

Exhibit 10       Examples of Prior Art to Bobcar's Patents

Exhibit 11       Comparisons of the Accused Vehicles to Bobcar's Design Patents

Exhibit 12       Examples of Bobcar's Patents' Departures from the Prior Art

Exhibit 13       Bobcar's Second Amended Complaint in the Aardvark Action (excerpted)

Exhibit 14       Decision Denying Aardvark's Motion to Dismiss (excerpted)

Exhibit 15       Decision Granting Aardvark Summary Judgment

Exhibit 16       Excerpt from briefing in *Aardvark* Action (*Aardvark* Dkt. 16-1)

## INTRODUCTION

Bobcar is the inventor of unique designs for mobile showrooms, which T-Mobile and Samsung used to great success.  But then Defendants jumped to a cheaper knockoff from Aardvark, rather than respect Bobcar's rights.  As a result, this action was filed to redress Defendants' utility and design patent and trade dress infringement.

Defendant moved to dismiss the trade dress claims on collateral estoppel grounds based on Judge Oetken's dismissal of Bobcar's claims in a prior case against Aardvark.  The Magistrate's Report and Recommendation ("Report") adopted Defendant's position.  But the grounds underlying Judge Oetken's decision have no bearing here.  He dismissed the prior action because Bobcar did not establish trade dress rights as of 2008 when Aardvark began to infringe.  The question here is completely different – whether Bobcar can establish trade dress rights as of 2015 and 2016 <u>when T-Mobile and Samsung began to infringe</u>.  This is seven to eight more years of evidence which the Report failed to take into account, and which was previously inadmissible.

Judge Oetken assessed trade dress secondary meaning, which is nothing if not time-dependent.  The greater the years of sales, the greater the brand recognition.  The secondary meaning in 2008 – mere months after the Bobcar's introduction – is not the same as in 2015-2016 with eight to nine years of sales.  Indeed, five years of use is the statutory "magic number" in the Trademark Office, creating a presumption of secondary meaning.[1]  That was not present in 2008, but **<u>was</u>** present in 2015-2016.  If Judge Oetken

---

[1] *See*, 15 U.S.C. §1052(f) (five years of use is prima facie evidence that the mark has become distinctive).  *See also, Converse, Inc. v. ITC*, 909 F.3d 1110, 1121 (Fed. Cir. 2018) ("several other courts of appeals, drawing on section 2(f), have found five years' substantially exclusive and continuous use to weigh strongly in favor of a finding of secondary meaning.").

had ruled that 5 years were not present in 2008, would that mean it was not present in 2015-2016 when Bobcar was still selling 7-8 years later?

The Report wrongly conflated two different issues - whether Bobcar had enforceable rights and whether particular vehicles infringe.  Judge Oetken only assessed enforceable rights, and only at one point in time (2008).  His ruling is irrelevant to the present assessment at a much later point in time (2015-2016).  The latter dates, when these two defendants began to infringe, are the only dates that count under the Second Circuit's decision in *Braun.*  *Infra* Section II.A ("the Braun Rule").  Moreover, the scope of Bobcar's trade dress claim is different here.

For collateral estoppel to apply, the prior issues must be identical.  But rights in 2008 vs. 2015-2016, and different trade dress definitions, are **not** identical.  The present issues were not previously litigated or decided, and could not have been.  Nor was there a full and fair opportunity to litigate the 2015-2016 rights:  in *Aardvark*, all post-2008 evidence was excluded as irrelevant.  Rights in 2015-2016 were not needed to support a valid and final judgment in *Aardvark*, since the question was whether Bobcar had rights when Aardvark began to infringe in 2008.  Bobcar's rights in 2015-2016 had no bearing on that question.  In short, the Report is erroneous as a matter of law.

Defendants also moved to dismiss the patent claims under Rule 12(b)(6).  The Report recommended that the motion be denied as to the utility patents; but granted as to the design patents based on the presence of "L-shaped panels" in the accused vehicles.  The latter recommendation is erroneous.  Design patent infringement is a factual question rarely amenable to a 12(b)(6) motion.  The Report made a factual finding on infringement, which is improper under the well-established 12(b)(6) legal standard.

Moreover, the Report failed to consider controlling legal principles and facts.  For example, the panels are not claimed in the '823 Patent, so the Report's reliance on the panels for non-infringement is just wrong.  Also, the Report did not give weight to Defendants' use of the accused vehicles because they are similar, and to admissions that they are similar.  It also gave no weight to Judge Oetken's denial of a similar 12(b)(6) motion finding a prima facie case of similarity.  And the Report did not even consider the role that the prior art must play in the infringement analysis as a matter of law.

In summary, the Report is fraught with reversible error as to the trade dress and design patents.  Defendants' motion should be denied in its entirety.

## FACTUAL BACKGROUND

### *The Intellectual Property*

Bobcar owns rights to inventions and design for unique mobile showroom vehicles ("Bobcars"). Amended Complaint ("AC") Dkt. 45 at 3 ¶¶9-10.  Three utility patents (Exhibits 1-3), and three design patents (Exhibit 4-6) are asserted.  *Id.* ¶¶11-16. Bobcar also asserts trade dress rights in the unique looks it popularized.  Its showrooms are surrounded by panels opening to provide vertical billboards over the right, left, and rear sides; bringing goods and services directly "to the people" on the street.  *See e.g.*, Exhibit 1, Fig. 2.  For over a decade, Bobcar commercialized these designs to acclaim and industry accolades.  For example, it received the EX Silver Award at the 2015 Experiential Marketing Summit for its T-Mobile campaign using the Bobcar (before T-Mobile switched to the infringement).

### *Defendants' Infringement*

Defendants infringed Bobcar's patents using vehicles (AC, Dkt. 45 at ¶39) supplied by Aardvark Event Logistics, Inc. ("Aardvark") (*id.* ¶40).  T-Mobile's infringement started

on July 6, 2015; and Samsung's on February 8, 2016. *Id.* ¶¶41-42. The accused vehicles are substantially the same overall in the eye of an ordinary observer as the design patents (*id.* ¶¶56-78). Design infringement is confirmed when the differences between the claimed and accused design are viewed in light of the prior art – the attention of the ordinary observer is drawn to those aspects of the claimed design that differ from the prior art. *Id.* ¶¶79-88; *infra,* Section III.D. Defendants also infringe Bobcar's trade dress (*id.* ¶¶89-95; ¶¶20-38).

*Bobcar's Prior Action Against Aardvark*

Previously, Bobcar sued Aardvark asserting that 13 groups of vehicles ("Aardys") infringed Bobcar's rights. *Bobcar Media LLC v. Aardvark Event Logistics, Inc.,* 1:16-cv-00885 (S.D.N.Y) ("*Aardvark*"). *Id.* ¶¶130-132. Bobcar's suit was dismissed on summary judgment. Exhibit 15. The court held that "Bobcar must show that its product acquired secondary meaning before the infringement began by Aardvark in 2008. *Id.* at 13. And it ruled that Bobcar had not produced sufficient evidence of secondary meaning by 2008.

In contrast, T-Mobile's infringement began in July 2015, and Samsung's began in February 2016. *Id.* ¶¶135-137. Bobcar's secondary meaning by July 2015 or February 2016 was not addressed in the Aardvark action. *Id.* ¶¶141-144. Moreover, the defense as to whether secondary meaning had to be proved by 2008 was not raised by Aardvark in years of litigation, including: years of fact discovery on Aardvark's defenses; Aardvark's interrogatory responses; and expert discovery. Nor was it raised by Aardvark's expert, Philip G. Hampton, who had extensive years of trademark experience, and served as the Assistant Commissioner for Trademarks. *Id.* ¶¶146-152. It was raised for the first time, *sua sponte*, in the Court's Opinion and Order dismissing the case on summary judgment, so Bobcar had no notice of the defense, or opportunity to respond before issuance of the Opinion dismissing Bobcar's claims. *Id.* ¶¶153-154. But most importantly, the Court only considered evidence

of secondary meaning when Aardvark's infringement began in 2008; whereas Bobcar here has seven to eight years more evidence as of when the infringement began in 2015-2016.  *Id.* ¶¶155.[2]  Thus, collateral estoppel cannot apply under applicable law.[3]

*The Willfulness of Defendants' Infringement*

In fact, Defendants were highly impressed with the Bobcars – having used Bobcar's products – and intentionally chose to use the cheaper Aardy vehicles underline because they imitated Bobcar's inventions and designs.  *Id.* ¶¶184-186.  T-Mobile's agency executive, Molly Kennedy, stated that the Aardy is "a close rendition of the Bobcar" and referred to it as "Very comparable to the Bobcar." *Id.* ¶¶188-189.  T-Mobile's executive Stanley Wisniewski stated that the Aardy is "very similar to what we used recently", i.e., to the Bobcar.  *Id.* ¶¶190.  T-Mobile chose to use vehicles similar to the Bobcar due to their success with the Bobcar, success that T-Mobile avowed in video testimonials.  *Id.* ¶¶191-196.  Samsung likewise chose to use an Aardy due to its success with the Bobcar and its desire to use a product similar to Bobcar's designs and trade dress.  *Id.* ¶¶197-201.

Defendants' revisionist history that the accused products do not infringe the patented Bobcar designs for lack of similarity, is at complete odds with the contemporaneous facts.

---

[2]  Aardvark also took the position that the first infringing vehicle and later infringing vehicles were each distinct and different, and its CEO and 30(b)(6) witness testified to that effect; so the infringing vehicle "when the infringement began" and the accused T-Mobile and Samsung vehicles were different vehicles.  *Id.* ¶¶156-159.

[3]  *Infra,* Section II.  Moreover, T-Mobile and Samsung were not parties to the prior action; are separate independent companies from Aardvark; never agreed to be bound by the determinations in Aardvark; did not have a legal relationship with Aardvark binding them to any determination of the issues in Aardvark; and Aardvark did not act as their representative.  *Id.* ¶¶163-170.  Yet, furthermore, Defendants had no control over the Aardvark action; did not act as a proxy, agent, or legal representative of Aardvark in the Aardvark action; and Bobcar did not have a full and fair opportunity to litigate against T-Mobile or Samsung in the Aardvark action.   Defendants were not subject to party discovery in the Aardvark action; Samsung willfully ignored a subpoena served on it, and provided no discovery in the Aardvark action; no members of Samsung were deposed; and only limited discovery was obtained from T-Mobile.  *Id.* ¶¶174-182.   Nor did the court take special care to protect the interests of T-Mobile or Samsung or Bobcar vis-à-vis each other in the Aardvark action.

**ARGUMENT**

## I.   STANDARD OF REVIEW

"In reviewing a Report and Recommendation, a district court 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'" *Lewis v. Krymkevich*, 2009 U.S. Dist. LEXIS 117686, at *2 (S.D.N.Y. Dec. 17, 2009), quoting, 28 U.S.C. § 636(b)(1).  "When … specific objections are made by the parties 'the district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.'"  *Id.* at *3, quoting Fed. R. Civ. P. 72(b)(3), and citing 28 U.S.C. 636(b)(1), and *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  "A *de novo* determination … permits a district judge to place whatever level of reliance upon the magistrate's proposed findings and recommendations as is appropriate in the exercise of sound judicial discretion."  *Id.*, citing *United States v. Raddatz*, 447 U.S. 667, 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980).

## II.   BOBCAR'S TRADE DRESS CLAIM IS NOT LEGALLY PRECLUDED

### A.   In Aardvark, Judge Oetken Only Determined Whether Bobcar Had Enforceable Rights in 2008 – Which is Irrelevant to This Action

The Report recommended that Bobcar's trade dress claim be dismissed here because of the dismissal in *Aardvark*.  It states that "in *Bobcar I,* Bobcar claimed that the Aardy vehicles … infringed Bobcar's trade dress.  **Judge Oetken found that they did not**." Report, Dkt. 64 at 4 (emphasis in original).  That statement is incorrect.

Judge Oetken never reached the question of whether these vehicles infringe.  *See,* Exhibit 15 at 17.  The issue he reached was whether Bobcar had enforceable rights, i.e., **whether Bobcar's trade dress had secondary meaning in 2008**.  *Id.*  Whether trade dress has secondary meaning, and whether another product infringes that trade dress (due

to likelihood of confusion), are separate legal issues.  The Report erroneously conflated them.  Granted, all infringement claims against Aardvark were dismissed for Bobcar's lack of rights in 2008.  But Bobcar's rights when Aardvark began to infringe has no bearing on Bobcar's rights years later when T-Mobile and Samsung began to infringe.

More specifically, Judge Oetken held as follows:  "Critically, Bobcar must show that its product acquired secondary meaning "before the infringement began." *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 826 (Fed. Cir. 1992) (citing *Saratoga Vichy Spring Co. v. Lehman*, 625 F.0d 1037, 1043 (2d Cir. 1980))."  *See,* Exhibit 15 at 13 ("*Braun* Rule").  He found that Aardvark's infringement began when it "came onto the market in 2008."  *Id.* at 15.  After assessing each of the trade dress factors, Judge Oetken then found that "as a matter of law, Bobcar has not produced sufficient evidence that its product acquired secondary meaning 'before the infringement began.' [i.e., in 2008] … Accordingly, Bobcar's trade dress infringement claim must be dismissed."  *Id.* at 17.

Here, the issues are totally different.  T-Mobile's infringement began **in 2015**. AC, Dkt. 45 at 8 ¶41.  Samsung's infringement began **in 2016**.  Dkt. 45 at 8 ¶42.  Under the *Braun* Rule, the question at bar is whether Bobcar accrued secondary meaning by 2015-2016 – **long after the 2008 status assessed by Judge Oetken**.[4]

As Judge Oetken noted, "[t]o assess whether a trade dress has acquired secondary meaning, courts consider the following factors: (1) advertising expenditures, (2) consumer studies, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of use."  Exhibit 15 at 13.

---

[4]  It was 7 years later in the case of T-Mobile, and 8 years later in the case of Samsung. T-Mobile began infringement in July 2015 (Dkt. 45 at 8 ¶41); and Samsung began in Feb. 2016 (*id.* ¶42).

The evidence on these factors is much heavier in 2015-2016 than the far more limited evidence in 2008, because 2008 was mere months after the Bobcar debuted.

Even Judge Oetken's Decision proves this.  On media coverage, he excluded all evidence after 2008 because it was "after the infringement began."  *Id.* at 15 ("none of these articles are from the relevant time period — before the Aardy came onto the market in 2008.").  On sales success, he only considered the revenue from campaigns that had begun in 2008.  *Id.* at 15-16.  On length and exclusivity, he rejected Bobcar's evidence of twelve years of use, because "the relevant question is the length and exclusivity of the use as of the date that Aardvark entered the market."  *Id.* at 17.

There is no way that Judge Oetken resolved the question before this Court: whether, under the *Braun* Rule, Bobcar's trade dress accumulated secondary meaning by 2015-2016 when T-Mobile and Samsung's infringements began.  Judge Oetken specifically did **not** resolve this.  He excluded evidence relevant to the present question because it was not relevant to the question before him.

### B.       The Federal Circuit Did Not Resolve The Present Question Either

The Federal Circuit decision did not adjudicate the question of secondary meaning in 2015-2016 either.  Judge Oetken ruled as to rights in 2008 and excluded later evidence, and the CAFC affirmed.  As such, the affirmance cannot be probative of secondary meaning in years afterwards.

The Report relied on the fact that the CAFC had the present infringements before it, and asserted that Bobcar "slices the issue far too finely."  Report, Dkt. 64 at 4.  But, in fact, Judge Oetken held that proof in 2008 was "critical."  Exhibit 15 at 13.  Based on his finding of no trade dress when Aardvark began to infringe in 2008, he disposed of all

claims for Aardvark's acts from 2008 on.  Here, Bobcar asserts rights against T-Mobile and Samsung for these defendants' acts of infringement beginning 2015-2016 and on. This is indisputably a new question, not previously decided.

In the prior context, the CAFC upheld the exclusion of post-2008 evidence; but in this context, post-2008 evidence is directly relevant.  Also, the trade dress scope asserted here is different than before.  Thus, there cannot be issue preclusion.  *Infra,* Section II.C.

### C.     The Law of Collateral Estoppel

Collateral estoppel, or issue preclusion, bars parties from relitigating an issue of fact or law that was fully and fairly litigated in a prior proceeding.  *Brandon v. NPG Records, Inc.*, 840 F. App'x 605, 607 (2d Cir. 2020).  It applies when: (1) the identical issue was raised in a previous proceeding; (2) the issue was litigated and decided in the previous proceeding; (3) the party against whom estoppel is being asserted had a full and fair opportunity to litigate the issue; and (4) resolution of the issue was necessary to support a valid and final judgment on the merits.  *Id.*  Defendants bore the burden of proving all four of these prongs, but did not prove **any** of them.

#### 1.     *The Identical Issues Were Not Raised in the Prior Proceeding*

"The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues."  *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456 (1985).  Defendants did not meet that burden.

##### i.     *The Trade Dress Claim is Different*

Bobcar's trade dress claim here is different from Aardvark.  Here, the claim (1) recites a display platform (Dkt. 45 at 5, ¶20(e)), which was not part of the definition in *Aardvark* (Exhibit 13, *Aardvark* Dkt. 12 at 4-5, ¶15).  (2)  It recites "a configuration in

9

which the panels <u>have a vertical component</u> raised above <u>the display platform and at least partially</u> above the height of the front cab" (Dkt. 45 at 5, ¶20(f)), whereas the underlined portions were not part of *Aardvark* (Exhibit 13, *Aardvark* Dkt. 12 at 4-5, ¶15).  (3)  It clarifies the scope of the compact cab and showroom (Dkt. 45 at 5, ¶20(b), n.1), which was not part of *Aardvark* (Exhibit 13, *Aardvark* Dkt. 12 at 4-5, ¶15).  And (4) it  recites "surfaces on three sides for the affixation of goods and/or displays, including, physical displays and/or electronic displays (e.g., computer or television displays)" (Dkt. 45 at 5, ¶20(g)), which was also not part of *Aardvark* (Exhibit 13, *Aardvark* Dkt. 12 at 4-5, ¶15). Thus, the trade dress claims in the two cases are not identical.

Even Defendants recognize that the trade dress scope has diverged.  As they put it, "Bobcar's formulation in the 2022 FAC has nearly complete overlap with the express language of the trade dress asserted in the 2016 Action."  Dkt. 53 at 14.  "Nearly complete" overlap is not the identical overlap required by collateral estoppel law.

The Report did not address these differences (Dkt. 64 at 3-5), which obviate the possibility of issue preclusion.  As a result, the Report should not be adopted.

### ii.    *The Secondary Meaning Issue is Different*

#### a.    The Issues are Factually Different

As noted, the *Aardvark* issue was whether there was secondary meaning when Aardvark's infringement began in 2008.  Here, the issue is whether there was secondary meaning when T-Mobile and Samsung's infringement began in 2015-16.  Judge Oetken's ruling of no secondary meaning in 2008 is not probative of the status many years later. There are 7-8 more years of evidence here on secondary meaning (brand awareness). The issues cannot possibly be identical, so Defendants' motion failed this prong.

b.      There Are Intervening Facts and Law

The Supreme Court has held that events after a first claim "often give rise to new material operative facts that in themselves, or taken in conjunction with the antecedent facts, create a new claim to relief." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.,* 140 S. Ct. 1589 (2020) (cleaned up).  "This principle takes on particular force in the trademark context, where the enforceability of a mark … often turns on extrinsic facts that change over time." *Id.*  Indeed, "liability for trademark infringement turns on marketplace realities that can change dramatically from year to year." *Id.*

Rationally, the status of secondary meaning *vel non* in 2008 does not resolve the status in 2015-2016.  And if there could be any doubt that this is a new matter, *Lucky Brand* put that to rest.  The enforceability of trade dress "turns on extrinsic facts that change over time" as to "marketplace realities" of brand recognition (secondary meaning).  *Id.*  Brand recognition in 2015-2016 cannot be blithely equated with brand awareness in 2008.  These are new realities for later adjudication; not prior prophecy.

Indeed, the accused T-Mobile and Samsung infringements did not even exist in 2008.  The accused T-Mobile and Samsung infringements are from 2015-2016.  And Aardvark itself admitted that the product in each campaign was distinct.  *Supra,* n. 1.

**It is also very notable that five years of use is the statutory "magic number" in the Trademark Office**, **creating a presumption of secondary meaning**.[5]  The

---

[5]  *See*, 15 U.S.C.  §1052(f) ("The Director may accept as prima facie evidence that the mark has become distinctive, as used on or in connection with the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made.").  *See also, Converse,* 909 F.3d at 1121 (Fed. Cir. 2018) ("To be sure, section 2(f) sets up an evidentiary rule for the Director rather than courts. But the Supreme Court has noted "that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable" in other trademark proceedings, such as suits seeking to enforce unregistered marks under 15

Bobcar was introduced in late 2007.  Exhibit 15 at 2.  The <u>months</u> of use by Bobcar in *Aardvark* don't come close to five years, in contrast to <u>8-9 years</u> of use in 2015-2016.

Thus, *Lucky Brand* confirms what logic dictates.  And as the Supreme Court has explained, "the supervening decision cannot justly be ignored by blind reliance upon the rule of collateral estoppel."  *Commissioner v. Sunnen*, 333 U.S. 591, 600, 68 S. Ct. 715, 720-21 (1948).  Importantly, "collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice.  It must be confined to situations where the matter raised in the second suit ***is identical in all respects*** with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." *Id.* at 599 (emphasis added).

Here, the matter is not identical in all respects.  The controlling facts have changed:  both the parameters of the trade dress claim, and the date for establishing secondary meaning under the *Braun* Rule.[6]  Thus, collateral estoppel cannot be applied.

### 2.    *These Issues Were Not Litigated or Decided*

Neither the current trade dress definition nor the 2015-2016 secondary meaning issue was raised in Aardvark.  Thus, they could not have been litigated or decided there. As a result, Defendants' motion also failed this prong.

---

U.S.C. § 1125(a). … And several other courts of appeals, drawing on section 2(f), have found five years' substantially exclusive and continuous use to weigh strongly in favor of a finding of secondary meaning.") (internal citations omitted).

[6]  As *Sunnen* explained at length, "[i]f the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation. … And where the situation is vitally altered between the time of the first judgment and the second, the prior determination is not conclusive. … a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable. … a modification or growth in legal principles as enunciated in intervening decisions of this Court may also effect a significant change in the situation. … In either event, the supervening decision cannot justly be ignored by blind reliance upon the rule of collateral estoppel." *Id.* at 600.

### 3.      *There Was No Full and Fair Opportunity to Litigate Them*

There was likewise no full and fair opportunity to litigate these issues in Aardvark.  The current trade dress scope was not litigated because a different scope of trade dress was previously asserted.  And the post-2008 secondary meaning evidence was also not litigated.  It was excluded because it was not germane to secondary meaning in 2008 'when the infringement began.'  In contrast, it is directly germane here, because these two defendants began to infringe in 2015-2016.

Moreover, whether secondary meaning had accrued as of 2008 "when the infringement began" was a defense first raised sua sponte by the court in its April 2020 ruling.  Exhibit 15, Cohen Dec. ¶17.  Aardvark never disputed that (*id*), and the Defendants here have not disproven or denied it.  Admittedly, "Rule 56 does permit a sua sponte grant of summary judgment dismissing a claim – but only under certain conditions."[7]  "While a district court may grant a motion for summary judgment 'on grounds not raised by a party,' it must first 'giv[e] notice and a reasonable time to respond.'"[8,9]  Considering the scope of Judge's Oetken's decision, which solely addressed secondary meaning in 2008, and the Federal Circuit's one-word affirmance of the same, there was certainly no full and fair prior opportunity to litigate Bobcar's rights as of 2015-2016 when T-Mobile and Samsung began to infringe.

---

[7]  *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) ("Some of the claims that the defendants did cursorily address in their motion were nevertheless decided … on grounds not raised in the motion. To do so without notice and an opportunity to respond runs counter to Rule 56(f)."); FRCP 56(f)(2).

[8]  *Lawson v. Homenuk,* 710 F. App'x 460, 466 (2d Cir. 2017), quoting Fed. R. Civ. P. 56(f). ("Because the district court did not do so here, we are obliged to conclude that it erred in granting summary judgment to defendants and denying Lawson reconsideration").

[9]  "The Supreme Court has emphasized that prior notice is a prerequisite to a *sua sponte* grant of summary judgment."  *ING Bank N.V. v. M/V Temara*, 892 F.3d 511, 523 (2d Cir. 2018) (citation omitted).

**4.     *Whether There was Secondary Meaning in 2015-2016 Was Not Necessary to Support a Final Judgment on Aardvark's Behalf***

Lastly, secondary meaning in 2015-2016 was not "necessary to support a valid and final judgment" before.  The court adjudicated Bobcar's rights when Aardvark's infringement began "in 2008" so Bobcar's later rights in 2015-2016 were irrelevant.

Defendants had the burden to meet all four prongs, but did not meet any.  As a result, the Report's recommendation on trade dress should not be adopted.

## III.     THE LAW AS TO THE DESIGN PATENT CAUSES OF ACTION

### A.     The Law on a 12(b)(6) Motion

Defendants' motion to dismiss the design patent claims faces a high standard.  "Under rules of procedure that have been well settled since well before our decision in *Theatre Enterprises*, a judge ruling on a defendant's motion to dismiss a complaint 'must accept as true all of the factual allegations contained in the complaint.'"  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 572, 127 S. Ct. 1955, 1975 (2007) (internal citations omitted).  As the Second Circuit similarly stated, "[i]n ruling on a motion to dismiss, a court must construe in plaintiff's favor any well-pleaded factual allegations in the complaint."  *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (citations and quotations omitted).  "[C]onsideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Id.*  "Dismissal of the complaint is proper *only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief*." *Id.* (emphasis added).

Based on these standards, the motion should be denied.  The Amended Complaint pleads that Defendants admitted the similarity of the designs, and used the accused

vehicles **because** of that similarity.  *Infra,* Section IV.A.  Judge Oetken likewise

acknowledged the similarity.  *Infra,* Section IV.B.  The applicable law and facts only

confirm the strong case of infringement.  *Infra,* Section IV.C-D.  At a minimum, this is a

factual question on which the Report improperly made a factual finding.

      **B.**      **The Law on Assessing Design Patent Infringement**

      *1.*      *The Standard for Similarity*

      A product infringes a design patent, if "in the eye of an ordinary observer, giving

such attention as a purchaser usually gives … the resemblance is such as to deceive such

an observer, inducing him to purchase one supposing it to be the other."  *Gorham Co. v.

White*, 81 U.S. 511, 528 (1871).  The Federal Circuit has long followed that standard.[10]

      *2.*      *The Design Must be Viewed as a Whole*

      "[T]he ultimate question requires determining whether 'the effect of the whole

design [is] substantially the same.'"  *L.A. Gear,* 988 F.2d at 1125 (citation omitted).[11]

      *3.*      *Principles of Claim Construction*

      Only the content of the claim is considered in the analysis.[12]  In a design patent,

the drawings show the claim in solid ("full") lines.[13]  Dotted or dashed lines are not part

---

[10] *See e.g., L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124-25 (Fed. Cir. 1993).

[11] The Federal Circuit has stressed this.  *L.A. Gear,* 988 F.2d at 1125 ("In conducting such analysis the patented design is viewed in its entirety, as it is claimed."); *Lanard,* 958 F.3d at 1343 ("the "ordinary observer" test for design patent infringement requires the fact finder to 'compar[e] similarities in overall designs, not similarities of ornamental features in isolation'") (citation omitted); *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1370 (Fed. Cir. 2006) ("A design patent protects the non-functional aspects of an ornamental design as seen as a whole.").

[12] *See e.g., L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993) ("Design patent infringement requires a showing that the accused design is substantially the same as the ***claimed*** design") (emphasis added); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) ("It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude.") (internal citations and quotes omitted).

of the claim.  The design patents-in-suit state this on their covers.[14]  And the Manual of

Patent Examining Procedure or "MPEP" (the Patent Office's legal handbook) confirms

this.[15]  Thus, when evaluating infringement, the accused products are compared to the

solid lines in the drawings only.  The broken lines are not part of the comparison.

### 4.     Overall Similarity Cannot Be Negated by Minor Differences

Importantly, "minor differences between a patented design and an accused

article's design cannot, and shall not, prevent a finding of infringement."  *Litton Sys., Inc.*

*v. Whirlpool Corp.,* 728 F.2d 1423, 1444 (Fed. Cir. 1984); *Payless Shoesource, Inc. v.*

*Reebok Int'l, Ltd.*, 998 F.2d 985, 990-91 (Fed. Cir. 1993).  As the Supreme Court has

emphasized, "slight variances in configuration … will not destroy the substantial

identity."  *Gorham*, 81 U.S. at 526-27.  Thus, "the two need not be the same to the eye of

an expert, because if that were the test, there never could be piracy of a patented design,

for human ingenuity has never yet produced a design, in all its details, exactly like

another, so like, that an expert could not distinguish them."  *Id.* at 527.

Also, the Federal Circuit has repeatedly warned that concentrating on small

differences distracts from the required analysis of the overall impression.  *Crocs,* 598

F.3d at 1303-04; *Payless*, 998 F.2d at 991 ("the district court erred by failing to 'consider

the ornamental aspects of the design as a whole and not merely isolated portions of the

patented design.'") (citation omitted).  For example, Exhibits 7-9 show the infringements

in *Gorham*, *Crocs*, and *L.A. Gear*.  Those products had numerous changes, but still

---

[13] *See e.g.*, Manual of Patent Examining Procedure §1504.04, p. 1500-47 ("The scope of a design claim is defined by what is shown in full lines in the application drawings").

[14] *See,* Exhibits 4-6 (stating on the bottom right of each cover page that the broken lines are for illustrative purposes only and form no part of the claimed design).

[15] *See* MPEP §1503.02 III, Broken Lines at 1500-10 (Rev. 07.2015, October 2015) ("Structure that is not part of the claimed design … may be represented in the drawing by broken lines").

infringed due to overall similarity.  The accused vehicles here are even closer to the patented designs than the products found in Exhibits 7-9 to infringe.  *Infra,* Section IV.

5.  *All Design Patent Views Must Be Considered*

Moreover, a design patent analysis that does not consider all the views of the claimed design is erroneous.  *See e.g., Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1326 (Fed. Cir. 2012) (rejecting the district court's validity ruling for failure to consider a partial side view in the design patent, and thus the full scope of the patent).[16]

Here, the Report relies on an L-shaped distinction that is not relevant to the claim of the '823 Patent.  And in the other patents, this is not relevant in certain views.  *Infra,* Section IV.D.1-3.  The Report failed to consider these facts, which was erroneous.  *Id.*

6.  *The Analysis Must be in the Context of the Prior Art*

Also, the infringements must be viewed in the context of prior art vehicles, and the patents' departures from the prior art.  As the en banc Federal Circuit explained, "[w]hen the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art."  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008) (en banc); *L.A. Gear*, 988 F.2d at 1124-25 (noting that ("reference is made to the prior art … to give appropriate weight to the factors that contributed to patentability."); *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 527 (Fed. Cir. 2012) (vacating decision because "[t]he district court did not consider the prior art context in which the ordinary observer test is applied.")

The Report erroneously failed to apply this principle.  *Infra,* Section IV.D.4.

---

[16]  *See also, Shure Inc. v. Clearone, Inc.*, 2020 U.S. Dist. LEXIS 191115, at *24 (D. Del. Oct. 15, 2020) ("all sides of a design claimed in a design patent are relevant").

## IV.    BOBCAR HAS PLED A CASE OF DESIGN PATENT INFRINGEMENT

Defendants' admissions, Judge Oetken's Decision, and a comparison of the

accused products to the patents – steered by the law – all show prima facie infringement.

### A.    Defendants' Admissions and Actions Show Infringement

Tellingly, it is not just Bobcar who considers the accused products to be similar.

The Defendants specifically relied on the similarity.  They were highly impressed by

Bobcar's designs when they worked with Bobcar, and then they chose the cheaper Aardy

vehicles because they imitated Bobcar's designs.  AC, Dkt. 45 at ¶¶184-186.

Molly Kennedy, an agency executive for T-Mobile, stated that the Aardy is "a

close rendition of the Bobcar" and referred to it as "Very comparable to the Bobcar." *Id*.

¶¶188-189.  Stanley Wisniewski of T-Mobile stated that Aardvark's vehicle is "very

similar to what we used recently", i.e., to Bobcar's vehicle. *Id*. ¶¶190.  T-Mobile chose to

use vehicles similar to the Bobcar due to their prior success with the Bobcar, success

avowed by T-Mobile in video testimonials.  *Id*. ¶¶191-196. Samsung likewise chose to

use a product similar to Bobcar's patented designs and trade dress, to duplicate its prior

success with Bobcar.  *Id*. ¶¶197-201.

Actions speak louder than words.  The Defendants considered the accused

vehicles to be similar to Bobcar's patented vehicles, and used the vehicles because of that

similarity.  *See also, id.* ¶¶202-206.  This is strong evidence of infringement.  The

Defendants' own admissions and actions undermine their entire motion.  And all

inferences should have been taken for Bobcar under Rule 12(b)(6).

The Report's failure to give weight to this was erroneous.  Even for this reason

alone, Defendants' motion should be denied, and the Report should not be adopted.

**B.      Judge Oetken's Decision is Persuasive**

The Report relies on the Aardy's L-shaped panels as precluding infringement. But, notably, Judge Oetken came to the opposite conclusion.

Judge Oetken assessed various Aardys with L-shaped panels.  Exhibit 14 at 5 (*Aardvark*, Dkt. 21 at 10).  And contrary to the Report (Dkt. 64 at 8), he had more than just side views.  *See,* Ex. 16, *Aardvark*, Dkt. 16-1, p.2 (excerpt from briefing).  He then ruled as follows:  "Applying the ordinary observer test, the Court concludes that these designs are sufficiently similar so as to deceive an ordinary observer. … Bobcar's allegations that the similarity is sufficient to deceive an ordinary observer … and that the designs are 'virtually identical' … are plausible.  At this stage, that is enough." *Id.*

The Report improperly gave no weight to that Decision.  To be sure, Judge Oetken's Decision is not binding on this Court, and Bobcar does not assert that it is.  But it is highly persuasive authority on a factual question which cannot be resolved at this stage in the first place.  Judge Oetken and Magistrate Judge Wang are entitled to have different perspectives.  But to the extent reasonable minds differ on this factual issue, it was legally wrong for the Report to resolve it on a 12(b)(6) motion.

**C.      Defendants' Design Patent Infringement is a Factual Question**

Examples of the accused products, compared to the solid lines of the patents, are shown in Exhibit 11.[17]  There is certainly a prima facie case of infringement.

Moreover, "[d]esign patent infringement is a question of fact."  *L.A. Gear,* 988 F.2d at 1124; *Gold Crest, LLC v. Project Light, LLC*, 2022 U.S. Dist. LEXIS 51395, at

---

[17]   The images in Exhibit 11 are of accused vehicles that are illustrated in Exhibits 8 and 10 of the Amended Complaint.  Dkt. 45-8, 45-10.  Plaintiffs, however, respectfully wish to seek further images of the accused vehicles in discovery.

*54-55 (N.D. Ohio Mar. 22, 2022) ("importantly, … design patent infringement … 'is a quintessential fact question'") citing *Kenu, Inc. v. Belkin Int'l, Inc.*, 2018 U.S. Dist. LEXIS 91198, 2018 WL 2445318, at *3 (N.D. Cal. May 31, 2018), citing *Amini*, 439 F.3d at 1371 ("conclusions about reasonable jurors are difficult to make on an issue of this factual dimension").

As such, Bobcar's claims can only be dismissed if "no reasonable factfinder could find infringement." *Wepay Glob. Payments LLC v. PNC Bank N.A*., 2022 U.S. Dist. LEXIS 97286, at *6 (W.D. Pa. June 1, 2022). In other words, one would have to hold that Judge Oetken was not a "reasonable factfinder." That is not tenable.

And if that were not enough, one would also have to ignore Defendants' own admissions and reliance on the similarity. *Supra,* Section IV.A. Rule 12(b)(6) does not permit this – it requires all inferences in Plaintiffs' favor.

Even for these reasons alone, the motion is meritless and should be denied.

### D.     The Overall Similarities Show Infringement

As shown in Exhibit 11, numerous features of the accused vehicles are identical to the claimed designs, and others are very similar. The Report gave no weight to these similarities; and it conflated all three patents together. When the operative legal principles are applied, they confirm the Report is wrong.

#### 1.     The L-Shaped Panels are Irrelevant to the '823 Patent

The relevant principle for analysis of the '823 Patent is that only the solid lines in the patent drawings count. *Supra,* Section III.B.3.

Applying that principle, the solid lines claimed in the '823 Patent show a series of frames surrounding a showroom on three sides. *See,* Exhibit 5. Only the frames are

claimed.  The overhanging panels are in dotted outline, so they are **not** claimed.  *Id.*
**Thus, the panels have absolutely no bearing on infringement of the '823 Patent**.

In contrast, the Report relied on the panels to avoid infringement.  Report, Dkt.
64, 8-9.  Its neglect of the scope of the '823 Patent claim is reversible error.  It violates
the "bedrock principle" that the invention is defined by the claim.  *Supra*, p.15 n.12.

Moreover, every accused product has similar frames as the patents, if not the
same frames.  Exhibit 11, Figures A and B.  Indeed, this striking similarity is enough for
ultimate summary judgment in Bobcar's favor – not a 12(b)(6) dismissal.

### 2.    The Mix of Frames and Panels Infringes the '675 Patent

Another principle is that all of the patent views count.  *Supra,* Section III.B.5.
The Report failed to take this principle into account when considering the '675 Patent.

Here, the solid lines show a series of frames around the showroom (like the '823
Patent), and a series of panels above the showroom.  Exhibit 6.  Thus, the accused
products have similar, if not identical, frames as the '675 Patents, as with the '823 Patent.
*See,* Exhibit 11, Figures C and D (comparison of products to '675 Patent).

As to the panels, the accused products have rectangular panels above the
showroom just like the '675 Patent.  *Id.*  Thus, the right and left side views of the
products and patents in Figures 4-5 are highly similar.

As to the remaining views, the panels of the accused vehicles have a vertical
component, like the patents, and add a horizontal component, producing an "L-Shape."
Whether this modification avoids infringement is a factual question.  A fact-finder must
consider:  the overall product and patent; that half the features (namely, the frames) are
the same; that, of the remaining features, they are very similar to Figures 4-5; and that, of

the remaining figures, the accused panels have a vertical component like the patent but add a horizontal component.  All in all, the "L-Shape" modification is a minor difference which cannot avoid infringement under established law.  *Supra,* Section III.B.4.  But at worst, this factual question cannot possibly be resolved on a 12(b)(6) motion.  All inferences must be taken in Bobcar's favor.  *Supra,* Section III.A.

> ### 3.   *The Mix of Features Infringes the '353 Patent*

For similar reasons, the accused products infringe the '353 Patent.  Exhibit 4.  They have the same frames as the '353 Patent.  Exhibit 11, Figures E and F.  They also overlap substantially regarding the panels, like in the '675 Patent.  *Id.*

Moreover, the accused products also overlap with other features of the '353 Patent.  For example, they have a similar small cab in the front, just like the '353 Patent.  *Id.*  They also have a single (not double) indentation on the sides for a wheel like the '353 Patent.  *Id*.  Taken as a whole, there is more than enough for a reasonable juror to find overall similarity (as Judge Oetken did).

At this stage, Bobcar has certainly pled enough that "in the eye of an ordinary observer, giving such attention as a purchaser usually gives … the resemblance is such as to deceive such an observer."   Again, at worst, this is a factual question which simply cannot be resolved on a 12(b)(6) motion.

> ### 4.   *The Prior Art Analysis Further Confirms This*

Considering the many striking similarities to the patented designs, Defendants have not met their high burden at this stage.  And the legal principle requiring that the prior art be taken into account only further confirms this.  The Report also failed to take this principle into account, which was again erroneous.

As noted above (*supra,* Section II.B.6), under the ordinary observer test, the differences between the claimed and accused designs need to be viewed in light of the prior art. *Egyptian Goddess*, 543 F.3d at 676 (en banc); *L.A. Gear*, 988 F.2d at 1124-25; *Revision Military,* 700 F.3d at 527 (vacating decision because "[t]he district court did not consider the prior art context in which the ordinary observer test is applied.").

Here, prior art is shown in Exhibit 10. The top right image is the Cushman vehicle. As shown in the exhibit, Bobcar transformed the Cushman to create Bobcar's first design. The middle and lower images are from the MacDonald Patent (Dkt. 45-15). As shown in Exhibit 12, Bobcar's design patents departed from Cushman and McDonald by placing a showroom in the back, placing vertical frames around the showroom, and surrounding a showroom with billboards which are vertically raised above the showroom.

Under the law, it is a crucial factor that the accused vehicles copy Bobcar's departures from the prior art. The '353 Patent (Ex. 12) provides a showroom in back of a small cab, with the showroom being surrounded by vertical billboards on the right, left, and rear sides. The accused vehicles (Ex. 11) copy this departure – they place a showroom in back of a cab, and surround the showroom with vertical billboards on the right, left, and rear sides. The '675 Patent (Ex. 12) provides a frame for a showroom on the left and right sides of the vehicle with a vertical billboard above the frame. The accused vehicles (Ex. 11) copy this departure. The '823 Patent (Ex. 12) provides a frame next to a central showroom, and the accused vehicles (Ex. 11) copy this departure too.

As *Egyptian Goddess* explained, "the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Egyptian Goddess*, 543 F.3d at 676. "If the accused design has copied a particular

feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing." *Id.* at 677.  As shown in Exhibits 11 and 12, that legal principle is directly on point.  The accused designs copy each feature that "departs conspicuously from the prior art."  Accordingly, "the accused design is … deceptively similar to the claimed design, and thus infringing." *Id.*

That the Report did not take this principle into account was again erroneous.

### 5.   *Overall, the Evidence Supports Infringement*

Design patent infringement is a factual question, and this is not the appropriate stage of proceedings to resolve the facts.  Instead, the pleadings must be taken as true, and all inferences must be drawn in Bobcar's favor.  *Supra,* Section III.A.  If anything, the facts are strong enough in Bobcar's favor to merit summary judgment.  But, in any event, Bobcar has pled a strong case of design patent infringement, meeting the 12(b)(6) standard.  There are so many similarities and controlling principles in Bobcar's favor that Defendants' motion as to the design patents should be denied.

### CONCLUSION

As to estoppel, Defendants fail all four prongs of the test.  They ignore the fact that the trade dress definition here is not the same as in *Aardvark*.  And they want to shoe horn findings on brand recognition in 2008 into a ruling on brand recognition many years later in 2015-16.  That turns a blind eye to the very language of the prior decision, which expressly excluded all post-2008 evidence.  Indeed, post-2008 evidence was irrelevant in *Aardvark* because it was after Aardvark's infringement began.  But it is directly relevant here because it is <u>before</u> T-Mobile and Samsung's infringements began.

The brand recognition developed by Bobcar in the few <u>months</u> from late 2007 to 2008 cannot be compared to the brand recognition developed by Bobcar in the years from late 2007 until 2015-2016.  The former months are nowhere near the 5 years needed for a presumption in Bobcar's favor, while the latter 8-9 years are well over it.  The issues in Aardvark and the issues here are night and day.

As to design patent infringement, the Report disregarded Defendants' own admissions and actions.  It gave zero weight to Judge Oetken's Decision.  It overlooked the legal scope of each patent's particular claim.  And it disregarded the legal requirement that substantial weight must be given to the fact that the accused vehicles copy the patents' departures from the prior art.  These are all erroneous approaches by the Report, as a matter of law.

The Report also gave short shrift to the many and overall similarities between the vehicles and design patents-in-suit.  Ultimately, it entered a factual finding regarding the perspective of an ordinary observer.  That is wholly improper at the 12(b)(6) stage, especially considering the evidence and legal principles supporting Bobcar's position, and the need to take all inferences in Bobcar's favor.

In conclusion, the Report should not be adopted as it is rife with reversible error.  Defendants' motion should be denied in all respects.

Dated: April 5, 2023                          */s/Morris E. Cohen*

_____
Morris E. Cohen (MC-4620)
Lee A. Goldberg (LG-9423)
GOLDBERG COHEN LLP
1350 Avenue of the Americas, 3rd Floor
New York, New York 10019
(646) 380-2084 (phone)
(646) 514-2123 (fax)

MCohen@GoldbergCohen.com
LGoldberg@GoldbergCohen.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 5, 2023, a copy of the foregoing BOBCAR'S

OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION ON T-

MOBILE AND SAMSUNG'S MOTION TO DISMISS was served on counsel of record

via the Court's ECF system.

Dated: April 5, 2023                    */s/ Morris E. Cohen*

                                        Morris E. Cohen